1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

| | | |
|---|---|---|
| ANGELA RACETTE, | ) | 1:08-cv-01645 GSA |
| | ) | |
| | ) | |
| Plaintiff, | ) | ORDER REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

11
12
13
14
15
16
17
18

19

## **BACKGROUND**

20

Plaintiff Angela Racette ("Plaintiff") seeks judicial review of a final decision of the

21

Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

22

disability benefits pursuant to Title II of the Social Security Act. The matter is currently before

23

the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable

24

Gary S. Austin, United States Magistrate Judge.[1]

25
26
27
28

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On November 26, 2008, the action was reassigned to the Honorable Gary S. Austin for all purposes.

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff protectively filed an application for disability insurance benefits on September 14, 2004, alleging disability beginning April 27, 2002, as the result of a stroke. AR 118. Her application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 55, 60-64, 66-72. ALJ Michael J. Haubner held a hearing on May 17, 2007, and issued an order regarding benefits on July 11, 2007, finding Plaintiff was disabled for the period between April 27, 2002 and August 4, 2004, but was not disabled for the period thereafter. AR 24-36. On August 29, 2008, the Appeals Council denied review. AR 5-7.

### Hearing Testimony

ALJ Haubner held a hearing on May 17, 2007, in Fresno, California. Plaintiff appeared and testified; she was represented by attorney Amy Foster. Vocational Expert ("VE") Judith L. Najarian also testified. AR 593-627.

Plaintiff lives in Stevinson, California, with her boyfriend and his father, both of whom work outside the home, in a single family, single level home. AR 600-602. She was forty-six years old at the time of the hearing. AR 600.

About once a day, Plaintiff will cook or prepare a meal. AR 602. She does dishes three times a day, cleans the kitchen once a week and cleans the bathrooms twice a month. AR 602-603. She sweeps the floors, but does not vacuum, nor does she dust the furniture or take out the trash. AR 604. She makes her bed about three times a week on average, and changes the sheets twice a month. AR 604. Plaintiff does a load of laundry every other day, folding or hanging the laundry; she does not iron. AR 604. She does grocery shopping twice a month. AR 604-605.

Plaintiff can take care of her personal needs such as showering, brushing her teeth and getting dressed. AR 602. She does not attend church, nor does she belong to any clubs or organizations. AR 605, 607. Plaintiff has two dogs and takes care of their feeding. They are not permitted outside and she does not walk or bathe the dogs. AR 606. Additionally, there are two

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

goats, four sheep and fifteen chickens on the property where she resides, but she does not feed or care for the livestock.  AR 606-607.

In addition to graduating from high school, Plaintiff received vocational training in 1978 for data entry.  AR 600-601.  Plaintiff has a valid driver's license and drives a small pickup truck with a manual transmission about once a week.  AR 601-602.  She estimates she goes out to eat about once a month, and visits with friends or family once a week.  AR 605.  When in public, Plaintiff generally avoids others.  AR 617.

About twice a day, Plaintiff talks to friends and family on the telephone.  There is a computer in the home which she uses about once a month.  AR 605.  She does not play video games.  She watches about an hour of television in the evenings.  AR 606.  She does not read the newspaper or magazines.  AR 606.

The ALJ confirmed with Plaintiff that her current health conditions include a history of right-sided hemiparesis, stroke, low back strain, and adjustment disorder with depressed mood, secondary to the stroke.  AR 607.

Plaintiff can lift and carry two pounds without hurting herself.  She has difficulty gripping or grasping things in her right hand.  When asked how long she was able to grip or grasp something with her right hand before she was unable to hold it any longer, she indicated her best estimate was five minutes.  AR 607-608.  Thereafter, she would need to rest her right hand for twenty to thirty minutes before attempting to grip or grasp another object.  AR 609.  When asked how long she was able to concentrate on something before she was unable to pay attention any longer, Plaintiff's best estimate was thirty minutes.  She would need to rest mentally for a period of twenty to thirty minutes before attempting to concentrate again.  AR 609.

In her best estimate, Plaintiff can stand for about thirty minutes before needing to sit down.  She indicated she could sit for about an hour at one time before needing to stand up.  AR 609.  Asked to consider an eight-hour period during the day, and what portion of that time period may require her to lie down due to pain or fatigue, Plaintiff indicated she would need to lie down for about an hour, although the time frame varies from day to day.  AR 610.

1    Asked whether she was fully compliant with the treatment and medications prescribed,

2    Plaintiff indicated that she was.  She did admit to smoking about a pack of cigarettes per day.

3    AR 610.

4    With regard to Plaintiff's past work, VE Najarian testified that Plaintiff's previous work

5    as a computer operator varies from the Dictionary of Occupational Titles ("DOT") in that

6    Plaintiff frequently lifted and carried fifty-pound boxes of paper.  Thus, the position typically

7    classified as light and skilled, six, was performed by Plaintiff at a medium rather than light level.

8    AR 614.  Additionally, because Plaintiff also performed repairs on the computers, hardware and

9    software, according to the DOT the alternate title for her position is electronics technician,

10   medium and skilled, seven.  Asked what skills were obtained in Plaintiff's past relevant work,

11   the VE indicated an extensive knowledge of computers, including operation, installation and

12   usage.  The skills are transferable to other computer-related jobs.  AR 615-616.

13   VE Najarian was asked to consider several hypothetical questions posed by the ALJ.

14   First, the VE was asked to assume a hypothetical worker of Plaintiff's age, education, language

15   and work history, who is able to understand and learn, but may have difficulty recognizing facts

16   and remembering verbally-presented information, who has limited abilities regarding social

17   interaction and in handling stress.  AR 616-617.  VE Najarian indicated the hypothetical worker

18   could not perform Plaintiff's past relevant work.  AR 617-618.  The VE was unable to determine

19   whether other work would be available to this hypothetical worker because the limitations

20   referenced are "too nebulous."  AR 618.

21   In a second hypothetical, the following additional limitations were to be considered:

22   moderate limitation in ability to understand, remember and carry out detailed instructions;

23   moderate limitation in ability to maintain attention and concentration for extended periods of

24   time; moderate limitation regarding the ability to interact with the general public and respond

25   appropriately to changes in the work setting.  Considering these additional limitations, VE

26   Najarian testified the hypothetical worker could not perform Plaintiff's past relevant work, nor

27   any other work.  AR 618-619.

28

In a third hypothetical, the following additional limitations were to be considered: moderate limitation in the ability to do the activities of daily living; moderate limitation in the ability to maintain social functioning; and moderate limitation in the ability to maintain attention and concentration.  VE Najarian indicated such a worker could not perform Plaintiff's past relevant work, nor any other work.  AR 619.

In a fourth hypothetical, the VE was asked to consider a hypothetical worker who could lift and carry twenty pounds occasionally and ten pounds frequently, who could stand and walk about six hours in an eight-hour day, could sit about six hours in an eight-hour day, could occasionally climb, balance, stoop, kneel, crouch or crawl, with limited ability for fingering or fine manipulation with the right upper extremity, but without gross manipulation limits of that same extremity, who should avoid concentrated exposure to hazards, including sharp objects. AR 619.  The VE indicated such a person could not do Plaintiff's past relevant work, particularly in light of the limitation regarding fingering.  AR 619-620.  This worker could however perform other jobs available in the national economy in the light or sedentary, unskilled categories. Examples of available work include: office messenger, DOT 239.667-010, with 12,413 jobs available in California after a forty percent reduction is applied; information clerk, DOT 237.367-018, with 9,511 available jobs in California; and cafeteria attendant, DOT 311.677-010, with 17,243 available jobs in California.  AR 621-623.

Asked whether combining hypothetical scenarios one and four would result in no ability to perform Plaintiff's past relevant work, the VE responded in the affirmative.  Other work could not be determined because hypothetical one is too nebulous.  AR 623.  Asked about combining hypothetical scenarios two and four, and combining hypothetical scenarios three and four, the VE indicated those combinations would result in an inability to perform Plaintiff's past relevant work or any other work.  AR 623.

In a fifth hypothetical, the VE was asked to consider a worker who could handle her own funds, understand, carry out and remember simple instructions, with the ability to respond appropriately to usual work situations and changes in routine, without substantial restriction in the activities of daily living.  VE Najarian indicated this person could not perform Plaintiff's past

relevant work, but could perform the full range of unskilled work such that the Grids would

apply.  AR 624.  The other work previously identified in hypothetical four would be available to

this worker as well.  AR 624.

Asked whether combining hypothetical scenarios one and five would result in no ability

to perform Plaintiff's past relevant work, the VE responded in the affirmative.  Again, other work

could not be determined because hypothetical one is too nebulous.  AR 624.  Asked about

combining hypothetical scenarios two and five, and hypothetical scenarios three and five, the VE

indicated those combinations would result in an inability to perform Plaintiff's past relevant

work or any other work.  Asked about combining hypothetical scenarios four and five, the VE

indicated that combination would result in an inability to perform Plaintiff's past relevant work,

but would allow for the other work identified in hypothetical four to be performed.  AR 625.

In a final and sixth hypothetical, the VE was asked to assume the hypothetical worker

could lift and carry two pounds, can grip or grasp something for five minutes with the dominant

right upper extremity before requiring rest, can concentrate for thirty minutes before requiring

mental rest, can stand for thirty minutes at one time and can sit for one hour at a time, with the

need for a one-hour unscheduled break per day.  VE Najarian indicated this hypothetical worker

could not perform Plaintiff's past relevant work, nor any other work.  AR 625.

### **Medical Record**

The entire medical record was reviewed by the Court.  Those records relevant to the

issues on appeal are summarized below.  Otherwise, the medical evidence will be referenced as

necessary in this Court's decision.

### *Mary Butcher, M.D.*

On April 29, 2002, Plaintiff was seen by Dr. Butcher after a fall on the previous Saturday.

She was not able to get up for two hours, and she reported her right side had not functioned

normally since the fall.  Objective findings include notations that Plaintiff's gait was "very

unsteady," that she was dragging her right foot and facial droop was present.  AR 264; *see also*

AR 447.

In an April 29, 2002, admission report, Dr. Butcher indicated Plaintiff was admitted for treatment at Valley Medical Center in Washington after being seen in her office two days after waking up with acute right-sided weakness.  A subsequent MRI of Plaintiff's brain indicated she had suffered two small infarcts on the left side of her brain.  Significant testing was performed.  In the absence of a history of hypertension, it was noted that Plaintiff's sole risk factor for stroke was her tobacco use.  A prior problem with alcohol was resolved, following abnormal liver test results, when Plaintiff stopped drinking.  Improvement was noted in the left facial droop and vision, she was able to walk with a four-prong cane, and the dense hemiparesis in her right arm had "improved somewhat."  Plaintiff was to undergo inpatient rehabilitation.  AR 236.  On examination, Plaintiff was in no acute distress, but was unable to stand without assistance.  Mouth droop on the left side was obvious, weakness was present in her right arm and leg, and she could not walk without "falling to the right or left."  Plaintiff's ability to perform heel-to-shin and finger-to-note tests on the right side was "not good."  Reflexes were decreased on the right side.  AR 237.  Dr. Butcher assessed acute onset of cerebrovascular accident with "what seems like left middle cerebral artery distribution."  AR 238; *see also* AR 455-456.

In a neurology consultation of April 30, 2002, Dr. Butcher noted "a significant neurologic history" for Plaintiff, including a 1998 MRI that "demonstrated some signs of a possible old hemorrhage in the left thalamic region."  It was noted that Plaintiff quit smoking in December 2001 after smoking a pack a day for twenty years.  She quit drinking alcohol three months prior.  AR 241.  Physical examination revealed right central facial weakness.  Vision findings were normal, and speech was clear.  It was noted that muscle testing revealed a right hemiparesis involving the upper extremity over the proximal and distal lower extremity.  Significant right upper extremity dysmetria was noted with finger-to-nose and right leg heel/shin testing.  Dr. Butcher's interpretation of the MRI results in a finding of "[e]vidence of an old, left thalamic hemosiderin deposition[,] acute left mid-brain/cerebral peduncle ischemic infarct, acute left punctate region of infarct in the left cerebellar region, again ischemic in nature."  AR 242; *see also* AR 452-454.

In a May 1, 2002, rehabilitation consultation, Dr. Butcher's physical examination revealed Plaintiff was in no acute distress.  Her speech was minimally dysarthric, facial weakness was present in the cranial nerves on the right side, reflexes were normal for the biceps, triceps, knee and ankle.  Grip and flexion were 4-/5, hip flexion and knee extension were 3/5, and ankle dorsiflexion was 2-/5.  AR 239.  The doctor's impression was cerebrovascular accident in cerebrobasilar territory.  Physical therapy, occupational therapy and a social services consult were planned.  AR 240; *see also* AR 449-451.

On October 10, 2002, Dr. Butcher completed a single-page UnumProvident disability claim form.  Dr. Butcher diagnosed Plaintiff with cerebral vascular accident or stroke, and listed objective findings of weakness in right hand and decreased cognitive function.  Noted symptoms included an inability to grasp, pick up or type with the right hand, and "memory."  The form asks the following question, "When should the patient be able to return to work?"  Dr. Butcher's response was "never."  AR 431.

On December 30, 2002, Dr. Butcher completed a Physical Evaluation form for the Department of Social and Health Services.  Objective findings were recorded as weakness in the right arm, fingers and wrist, fine and gross "motor skills severely impaired on the right."  Cognitive function was "impaired" and memory was "altered."  AR 434.  Dr. Butcher found Plaintiff severely limited, or "[u]nable to lift at least 2 pounds or unable to stand and/or walk."  Asked how Plaintiff's medical condition affected her ability to care for children, Dr. Butcher wrote "she would not be able to care for young children [zero] lifting."  Dr. Butcher indicated Plaintiff was "permanently" unable to perform in a normal work setting.  Plaintiff's treatment result to date were recorded as "stagnant."  AR 435,

### Michael Rosenfield, D.O.

On December 17, 2002, Dr. Rosenfield performed an examination of Plaintiff.  Plaintiff indicated she had suffered a series of strokes eight months prior and had not worked since that time.  Plaintiff advised Dr. Rosenfield that she gets up in the morning and takes care of a thirteen-year-old and a fourteen-year-old by making their lunches and sending them off to school.  She was cooking, doing the laundry and was able to drive.  AR 478.  Dr. Rosenfield's physical

examination revealed, in relevant part, that Plaintiff's motor skills were somewhat delayed, but she was able to perform finger-to-nose and heel-knee tests, gait was normal, and there were no neurological deficits secondary to pain or poor effort.  Following range of motion examination, Dr. Rosenfield noted no paravertebral muscle spasms, tenderness, crepitus, effusion, deformity or trigger points were found.  His neurological examination revealed motor strength of 5/5 and normal deep tendon reflexes at 2/4 left and right.  The doctor's functional assessment indicated that Plaintiff could be expected to stand, walk and sit with normal breaks for an eight-hour workday without limitation.  AR 480.  Dr. Rosenfield imposed no limits with regard to Plaintiff's ability to lift and carry weight.  AR 480.  The doctor did not impose any postural, manipulative, visual, communicative or environmental limitation.  AR 481.

### Steven Swanson, Ph.D.

On February 5, 2005, Steven C. Swanson, Ph.D. performed a psychological assessment. In a history provided by Plaintiff, it was recorded that she was able to independently take care of her personal hygiene needs, do household chores and laundry, prepare simple meals, shop and use public transportation.  Plaintiff reported watching television, walking the dog, feeding the chickens and cooking.  She interacted socially with a few friends.  While she is licensed to drive, she does not do so.  AR 564.  The doctor noted Plaintiff's physical appearance was unremarkable.  She was fully oriented and cooperative.  He did not "she seemed motivated to exaggerate her symptomatology and to make a case for disability."  AR 565.  Gait was normal, speech was normal, facial expressions were appropriate, affect was appropriate, mood was euthymic, form and content of thought were within normal limits, and there was no indication of suicidal ideation or hallucination.  AR 565.  The Wechsler Adult Intelligence scale - Third Edition (WAIS-III), Wechsler Memory Scale - Third Edition (WMS-III), the Bender Visual Motor Gestalt Test, and the Trail Making Test A and B were administered.  AR 584-587.  The WAIS-III results were verbal IQ of 85, performance IQ of 83 and Full Scale IQ of 83.  The WMS-III results included a general memory index score of 86 and a delayed recall index score of 79.  The Bender results revealed no "gross design errors," but noted a tremor in Plaintiff's right hand impacted the quality of the lines drawn.  The trail making test revealed completion within

9

normal limits and the doctor noted the results did "not make a strong case for organicity."  AR 566-567.  Dr. Swanson's diagnosis included the need to rule out cognitive disorder NOS and malingering.  AR 567.  The doctor believed Plaintiff capable of maintaining concentration, relating to others in a job setting, with the ability to handle funds in her own best interests, and ability to understand, carry out and remember simple instructions.  She is able to respond appropriate to usual work situations and changes in routine, and it was noted there were no substantial restrictions in her daily activities.  AR 567-568.

### ALJ's Findings

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 27, 2002, and had the severe impairments of history of right-sided hemiparesis secondary to left cerebral peduncle stroke; lumbosacral strain/spasm; history of vascular dementia with cerebral vascular accident; and adjustment disorder with depressed mood.  AR 27.  Nonetheless, the ALJ determined that none of the severe impairments met or exceeded one of the listing impairments.  AR 28.

Based on his review of the medical evidence, the ALJ determined that between April 27, 2002 and August 4, 2004, Plaintiff had the residual functional capacity ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently, could stand, walk and sit for six hours in an eight-hour workday, could climb, balance, stoop, kneel, crouch and crawl occasionally, could occasionally perform fine manipulation with her right upper extremity, was to avoid concentrated exposure to unprotected heights, automotive equipment or dangerous moving machinery, and was moderately limited in the activities of daily living, maintaining social functioning, and in her ability to maintain concentration, persistence and pace.  AR 28.

Nevertheless, Plaintiff could not perform her past relevant work.  AR 31.  Moreover, the ALJ found there were no jobs available in the national economy that Plaintiff could perform during the period between April 27, 2002, and August 4, 2004.  AR 32.

Concerning the period after August 4, 2004, however, the ALJ found that while Plaintiff remained unable to perform her past relevant work (AR 35), she had the RFC to perform other jobs that exist in significant numbers in the national economy.  AR 36.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20

C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  Applying this process in this case, the ALJ

found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of

her disability; (2) has an impairment or a combination of impairments that is considered "severe"

based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an

impairment or combination of impairments which meets or equals one of the impairments set

forth in Appendix 1, Subpart P, Regulations No. 4; (4) was unable to perform her past relevant

work; yet (5) retained the RFC to perform other jobs that exist in significant numbers in the

national economy.  AR 24-36.

Here, Plaintiff argues that the findings are not supported by substantial evidence and are

not free of legal error because (1) the ALJ's credibility determination is erroneous; (2) the ALJ's

reliance on the consultative psychologist's opinion is erroneous; (3) the ALJ's rejection of the

opinion of Plaintiff's treating physician is contrary to law; and (4) the RFC is faulty, as are the

jobs identified by the VE because they do not comport with the RFC.  (Doc. 14 at 5-12.)

## DISCUSSION

### A.    *The Credibility Determination*

Plaintiff contends the ALJ's finding that her statements concerning the limiting effects of

her symptoms are not entirely credible is based upon "an incomplete and undeveloped hearing

record and by misstating the documentary evidence, the testimony and taking both out of

context." (Doc. 14 at 5-7.)  Defendant contends there is affirmative evidence of malingering, and

that even in the absence of malingering, the ALJ provided sufficient reasons for discounting

Plaintiff's testimony concerning the severity of her symptoms.  (Doc. 18 at 11-14.)

A two step analysis applies at the administrative level when considering a claimant's

credibility. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must

produce objective medical evidence of an impairment that could reasonably be expected to

produce some degree of the symptom or pain alleged. *Id.* at 1281-1282.  If the claimant satisfies

the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony

regarding the severity of his symptoms only if he makes specific findings that include clear and

convincing reasons for doing so. *Id.* at 1281.  The ALJ must "state which testimony is not

1  credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161

2  F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack of specific,

3  clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for

4  [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence");

5  Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific to make

6  clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the

7  individual's statements and reasons for that weight").

8      An ALJ can consider many factors when assessing the claimant's credibility.  *See Light v.*

9  *Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.1997).  The ALJ can consider the claimant's

10  reputation for truthfulness, prior inconsistent statements concerning symptoms, other testimony

11  by the claimant that appears less than candid, unexplained or inadequately explained failure to

12  seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities,

13  claimant's work record, or the observations of treating and examining physicians. *Smolen*, 80

14  F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007).

15      The first step in assessing Plaintiff's subjective complaints is to determine whether

16  Plaintiff's condition could reasonably be expected to produce the pain or other symptoms

17  alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  Here, Plaintiff suffered a

18  stroke and suffered from a history of right-sided hemiparesis, vascular dementia and adjustment

19  disorder.  AR 27-28.  When making his finding as to Plaintiff's RFC after August 4, 2004, the

20  ALJ found that "[Plaintiff's] medically determinable impairments could reasonably be expected

21  to produce some of the alleged symptoms, but that the [Plaintiff's] statements concerning the

22  intensity, persistence and limiting effects of these symptoms are not entirely credible beginning

23  August 5, 2005."  AR 34.  This finding satisfied step one of the credibility analysis.  *Smolen*, 80

24  F.3d at 1281-1282.

25      In the absence of a finding that a claimant in malingering, an ALJ is required to provide

26  clear and convincing reasons for rejecting Plaintiff's testimony.  *Smolen*, 80 F.3d at 1283-1284;

27  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (as amended). When there is evidence of an

28  underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the

1   severity of his symptoms solely because they are unsupported by medical evidence. *Bunnell v.*

2   *Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7.  Moreover, it is not sufficient for the ALJ

3   to make general findings; he must state which testimony is not credible and what evidence in the

4   record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993); *Bunnell*,

5   947 F.2d at 345-346.

6      In this case, the ALJ made the following findings regarding Plaintiff's credibility:

7       After considering the evidence of record, I find that the claimant's
     medically determinable impairments could reasonably be expected to produce
8   some of the alleged symptoms, but that the claimant's statements concerning the
     intensity, persistence and limiting effects of these symptoms are not entirely
9   credible beginning on August 5, 2004.
         The claimant testified that she is able to lift and carry two pounds, and is
10  able to grip with the right hand for five minutes before resting the hand for 30
     minutes.  She said she can concentrate for 30 minutes, then needs to rest mentally
11  for 20 to 30 minutes.  She stated she can stand for 30 minutes and sit for one hour,
     but needs to lie down for one hour out of eight.
12      The claimant testified to a wide range of activities of daily living that are
     not consistent with the limitations stated above.  She said she drives on the
13  average of once a week and drives a small pick-up truck with stick shift.  I note the
     ability to drive stick shift is not entirely compatible with the claimant's allegations
14  of severe right-handed weakness.  She stated she cooks, cleans up after cooking,
     cleans the kitchen once a week, cleans the bathroom twice a month, makes her
15  bed three times a week, and changes the sheets twice a month.  She said she does
     a load of laundry every other day, and folds and hangs the clothes.  The claimant
16  testified that she sweeps once a week, shops for groceries and personal needs once
     a month, and goes out to eat once a month.  She said she has a cell phone and a
17  computer that she uses once a month.  She said she does not play video games,
     vacuum, take trash out, iron, or do yard work, although her boyfriend stated she
18  gardens.  The claimant testified that she watches television for one hour, but does
     not read.  She said she has two dogs that she feeds, but does not feed or bathe the
19  two goats, four sheep, or 15 chickens.  However, claimant told Dr. Swanson she
     walks the dogs and feeds the chickens.  This is consistent with her statement in
20  October 2006 that she was "watering" the chickens.  I find it particularly
     detrimental to the claimant's credibility that she testified that she is compliant
21  with medical treatment, yet she continues to smoke cigarettes albeit multiple
     strong recommendations against it.  The claimant also seems to exaggerate
22  somewhat.  For example, she stated she could only concentrate for 30 minutes at
     the longest, and then must rest mentally for 20 to 30 minutes, yet she paid
23  attention and responded appropriately throughout the entire hearing, lasting over
     45 minutes.
24      Because the claimant's allegations of severely disabling symptoms are not
     fully supported by the records of treating and examining physicians, and because
25  of the inconsistencies in the record and the testimony, I give very little weight to
     the claimant's subjective complaints for the period from August 5, 2004 through
26  the date of the hearing.
         I also considered the third party statement . . .. I note that it refers to
27  significant activities of daily living.  For example, it states that the claimant
     dresses, bathes, does hair care, shaves, feeds herself, and uses the toilet, but
28  slower than normal. It also states she gardens with help, goes outside daily, walks,

and rides in a car for transportation.  She goes out alone, shops in stores, counts change, watches televisions, and does small art projects.  However, the third party also indicates that claimant's condition "affect[s]" certain areas such as "lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, seeing, memory, concentration, understanding, and getting along."  However, it fails to quantify any such limitations or explain how those areas are affected, with the exception of concentration, which allegedly limits the claimant to "30 mins 1 hr," which is not consistent with the other evidence of record, or even the claimant's own testimony.  The other exception is the third party states the claimant can only walk 100 feet and then must rest 10 to 15 minutes before resuming walking, but that too is contrary to both the medical evidence discussed above and the claimant's own testimony.

AR 34-35, internal citations omitted.  The ALJ provided clear and convincing reasons for his credibility finding.  *Smolen*, 80 F.3d at 1283-1284; *Lester v. Chater*, 81 F.3d at 834.  He specifically indicated what testimony and evidence suggested Plaintiff's complaints were not credible.

Notably, amplification of symptoms can constitute substantial evidence supporting the rejection of a subjective complaint concerning the severity of symptoms.  *Matthews v. Shalala*, 10 F.3d 678, 380 (9th Cir. 1993).  Here, Dr. Swanson's concerns about possible malingering was a careful attempt to discern Plaintiff's condition and capacities, and was properly considered by the ALJ.

The ALJ pointed out inconsistencies in Plaintiff's testimony and the record.  Inconsistent statements are properly factored into an evaluation of credibility.  *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002).  The ALJ also permissibly drew reasonable inferences from the evidence.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

An ALJ can look to daily living activities as part of the credibility analysis.  *Burch v. Barnhart*, 400 F. 3d at 680;  *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.  If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.  *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d at 600.  The ALJ must make "specific findings relating to [the daily] activities" and their transferability to conclude that a claimant's daily activities warrant an

1   adverse credibility determination. *Orn v. Astrue*, 495 F.3d at 639.  Here, the ALJ specifically

2   noted a number of Plaintiff's daily activities, including but not limited to, cooking, cleaning and

3   other household chores, shopping, occasional driving and caring for animals.  AR 34.

4       Morever, even where an ALJ's credibility decision may include an improper basis, it may

5   be upheld on other bases.  *See eg., Batson v. Barnhart*, 359 F.3d 1190, 1197 (9th Cir. 2004).

6       Part of Plaintiff's argument is an allegation that the ALJ failed to fully develop the record.

7   (*See* Doc. 14.)  An ALJ has a duty to fully and fairly develop the record where the evidence is

8   ambiguous or the record is inadequate to allow for proper evaluation.  *Tonapetyan v. Halter*, 242

9   F.3d 1144, 1150 (9th Cir. 2001).  Despite Plaintiff's assertion to the contrary, this Court finds the

10  ALJ had no further duty to develop the record as the evidence before him allowed for a proper

11  evaluation.  Plaintiff's complaints regarding "follow up" questions during the hearing in the areas

12  of Plaintiff's shopping and driving are unavailing, as is the assertion that the ALJ's questions

13  were leading or threatening.  Defendant notes that Plaintiff was represented by counsel at the

14  hearing, yet counsel did not question her client despite being given the opportunity.  (Doc. 18 at

15  14.)  Defendant's point is well taken.

16      This Court must uphold an ALJ's decision where the evidence is susceptible to more than

17  one rational interpretation.  *Burch v. Barnhart*, 400 F.3d at 680-681.  ALJ Haubner's credibility

18  determination is a rational interpretation of the evidence, and thus is supported by substantial

19  evidence and is free of legal error.

20      **B.**    ***Dr. Swanson's Opinion***

21      Plaintiff complains that the ALJ's reliance on Dr. Swanson's opinion was error because

22  "it is replete with inaccurate scientific information, sloppy observations, unsupported opinions,

23  and is contradicted by the treatment records . . .."  (Doc. 14 at 7-9.)  Defendant responds that the

24  ALJ properly weighed Dr. Swanson's opinion and that Plaintiff improperly seeks this Court's

25  independent analysis of the medical evidence rather than its review of the ALJ's findings.  (Doc.

26  18 at 14-15.)

27

28

The ALJ found as follows:

The medical evidence shows that Steven C. Swanson, Ph.D. performed a consultative psychological assessment of the claimant on February 5, 2005. She reported that she was able to perform all of her activities of daily living. She took care of her own hygiene, did household chores, shopped, did laundry, and was able to use public transportation. She cooked, fed the chickens, and walked the dog. She had a driver's license, but said she did not drive. The claimant's presentation was not remarkable and her speech was normal. She had no signs of depression. Her short-term, recent, and remote memories were within normal limits. She had adequate abstraction ability. Concentration was adequate and insight and judgment were intact. General fund of knowledge was within normal limits. The claimant maintained satisfactory attention and concentration throughout the testing. Dr. Swanson considered the test results valid and representative of her current functioning. The claimant's scores on the Wechsler Adult Intelligence Scale - Third Edition were Verbal, 85; Performance, 83; and Full Scale, 83. Dr. Swanson stated that the scores were in the low average range of intellectual ability, and that the claimant could be expected to perform at a level that was somewhat lower than same-aged peers. The claimant's scores on the Wechsler Memory Scale III were 86 for general memory and 79 for delayed recall. Dr. Swanson said the scores were consistent with the intellectual scores, and did not reveal a weakness in memory functioning. On the Bender-Gestalt Test, the claimant did not make gross design errors, but her right-hand tremor affected the quality of the lines. On the Trail Making Test, the claimant's performance fell within normal limits. Dr. Swanson did not find any evidence of organicity. However, he stated that, although the claimant appeared cooperative, she also seemed motivated to exaggerate her symptoms and to make a case for disability. Consequently, Dr. Swanson had no diagnosis on Axis I except for rule-out diagnosis of cognitive disorder not otherwise specified and malingering. He opined that the claimant was able to maintain concentration and understand, remember, and carry out simple instructions. She was able to relate appropriately to others in the job setting. She was able to respond appropriately to usual work changes and changes in routine.

I give substantial weight to Dr. Swanson's opinion because it is based on a thorough evaluation, review of the records, and psychological testing. His opinion is consistent with the medical evidence and with the claimant's level of activities of daily living. However, I do not believe that the claimant's condition improved suddenly in February 2005. Therefore, I find that the claimant's psychological impairments improved by around August 5, 2004. The opinion is consistent with Dr. Swanson's evaluation.

AR 33-34, internal citations omitted.

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). Dr. Swanson is an examining physician.

The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v.*

1  *Heckler*, 753 F.2d 1450 (9th Cir.1984).  As is the case with the opinion of a treating physician,

2  the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted

3  opinion of an examining physician.  *Pitzer*, 908 F.2d at 506.  The opinion of an examining

4  doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate

5  reasons that are supported by substantial evidence in the record.  *Andrews v. Shalala*, 53 F.3d

6  1035, 1043 (9th Cir.1995).  Lastly, a consultive examiner's opinion may constitute substantial

7  evidence because it is based upon the examiner's independent findings and observations.

8  *Tonapetyan v. Halter*, 242 F.3d at 1149.

9        Plaintiff complains Dr. Swanson "was unaware of or ignored basic principles of

10  neuropsychological evaluation of individuals who have suffered a brain injury," alleges the report

11  is conclusory and is "inadequate as a neuropsychological assessment."  (Doc. 14 at 8-9.)

12  Plaintiff's single source of authority is Muriel D. Lezak, et al., *Neuropsychological Assessment*,

13  pages 648 through 656 (4th ed. 2004), which has been appended as an exhibit to the brief.  Yet, it

14  is the duty of the ALJ to resolve conflicts in the evidence, not that of the court.  *Magallanes v.*

15  *Bowen*, 881 F.2d 747, 751, 755 (9th Cir. 1989).  A district court reviews the Commissioner's

16  final decision under the substantial evidence standard; the decision will be disturbed only if it is

17  not supported by substantial evidence or is based on legal error.  *See* 42 U.S.C. § 405(g)

18  ("findings of the Commissioner of Social Security as to any fact, if supported by substantial

19  evidence, shall be conclusive"); *Smolen v. Chater*, 80 F.3d at 1279; *Andrews v. Shalala*, 53 F.3d

20  at 1039.  It is not the province of the district court to reweigh the factual and credibility

21  determinations of the ALJ *de novo.  Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

22        Here, Dr. Swanson's report is based upon his independent findings and observations, and

23  thus constitutes substantial evidence.  *Tonapetyan v. Halter*, 242 F.3d at 1149.  Moreover, Dr.

24  Swanson is a board certified psychologist, whose opinion is clearly entitled to the weight

25  afforded it by the ALJ.  *See* 20 C.F.R. § 404.1527(d)(5).

26        This Court finds the ALJ's determination regarding Dr. Swanson's report is supported by

27  substantial evidence and is not based on legal error.

28

### C.   *Mary Butcher, M.D.*

Plaintiff asserts the ALJ's rejection of Plaintiff's treating physician's opinion is erroneous because, contrary to his finding, it is supported by "extensive documentation of [Plaintiff's] major stroke, hospitalization and rehabilitation, during which Dr. Butcher referred [her] to numerous specialists for diagnosis, treatment and consultation." (Doc. 14 at 9-11.)  Defendant contends that Dr. Butcher's finding that Plaintiff is unable to work is an ultimate determination left to the Commissioner, and that the doctor's other findings are not supported by the medical record.  (Doc. 18 at 15-16.)

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d at 830.  Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830.  Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record.  *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  *Magallanes  v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.  *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).  Therefore, a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record.  *Lingenfelter v. Astrue*, 504 F.3d 1028.

In *Orn v. Astrue,* 495 F.3d 625, the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion an examining physician over that of a treating physician.  "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not '"substantial evidence."'  *Orn,* 495 F.3d at 632; *Murray*, 722 F.2d at 501-502.

1    "By contrast, when an examining physician provides 'independent clinical findings that differ

2    from the findings of the treating physician' such findings are 'substantial evidence.'" *Orn*, 496

3    F.3d at 632; *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985).  Independent clinical findings

4    can be either (1) diagnoses that differ from those offered by another physician and that are

5    supported by substantial evidence, *see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1985), or (2)

6    findings based on objective medical tests that the treating physician has not herself considered,

7    *see Andrews*, 53 F.3d at 1041.

8         If a treating physician's opinion is not given controlling weight because it is not well

9    supported or because it is inconsistent with other substantial evidence in the record, the ALJ is

10   instructed by Section 404.1527(d)(2) to consider the factors listed in Section 404.1527(d)(2)-(6)

11   in determining what weight to accord the opinion of the treating physician.  Those factors include

12   the "[l]ength of the treatment relationship and the frequency of examination" by the treating

13   physician; and the "nature and extent of the treatment relationship" between the patient and the

14   treating physician.  20 C.F.R. 404.1527(d)(2)(i)-(ii).  Other factors include the supportablility of

15   the opinion, consistency with the record as a whole, the specialization of the physician, and the

16   extent to which the physician is familiar with disability programs and evidentiary requirements.

17   20 C.F.R. § 404.1527(d)(3)-(6).   Even when contradicted by an opinion of an examining

18   physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to

19   deference."  SSR 96-2p; *Orn*, 495 F.3d at 632-633.  "In many cases, a treating source's medical

20   opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the

21   test for controlling weight."  SSR 96-2p; *Orn*, 495 F.3d at 633.

22         Here, the ALJ found as follows:

23         The claimant's primary care physician, Mary Butcher, M.D., completed a
           form for the claimant's long term disability insurance in October 2002.  The
24         doctor indicated the claimant had weakness of the right hand, decreased cognitive
           function, inability to grasp with the right hand, pick up items, or type.  She also
25         had decreased memory.  Dr. Butcher opined that the claimant was unable to work
           in her former job and would never be able to return to work.  I give some weight
26         to Dr. Butcher's opinion that the claimant was unable to return to her previous
           work, but little weight to the opinion that the claimant would never be able to
27         work because the ultimate determination of disability is an issue reserved to the
           Commissioner under Social Security Ruling 96-5p.
28         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

1
2
3
4
5
6
7
8

       Dr. Butcher completed a form on December 30, 2002 for Social Services. She described her findings as dysarthria, weakness of the right arm, fingers, and wrist, severely impaired right fine and gross motor skills, altered memory, and impaired cognitive function.  She opined that the claimant was unable to lift two pounds or stand and walk because of decreased ability to control the right hand and fingers, and because of weakness in the right leg.  Dr. Butcher stated the claimant would not be able to care for young children because of the inability to lift.  She stated the limitations were permanent.  I give little weight to this opinion because it is not supported by objective evidence.  There is no indication in the file that the claimant was limited to lifting only two pounds or that she was not able to lift a child.  On the contrary, she told Dr. Rosenfield that she took care of her two children, made lunches for them, cooked, did laundry, and was able to drive.  This report by the claimant to the consulting physician does not comport with Dr. Butcher's severe limitations.

9
AR 29-30, internal citations omitted.

10      The Court notes initially that Plaintiff was found to be disabled during the period between

11
April 24, 2002 and August 4, 2004.  AR 31-32.  Dr. Butcher was Plaintiff's treating physician

12
during the period, until Plaintiff moved to California sometime in 2004.  Essentially then,

13
Plaintiff's argument pertains to the ALJ's finding that Plaintiff improved after August 4, 2004,

14
and thus was no longer disabled at that point, contrary to Dr. Butcher's findings in 2002 that

15
Plaintiff would never be able to return to work.

16      The ALJ provided specific and legitimate reasons for rejecting the opinion of Dr.

17
Butcher.  Dr. Butcher's determination that Plaintiff was disabled and could not return to work - a

18
determination reserved to the Commissioner - was subsequently contradicted by other doctors.

19
In a 2003 evaluation, Alysa A. Ruddell, Ph.D., noted that Plaintiff had "improved substantially"

20
in the interim following her April 2002 strokes, and improvement was expected in the absence of

21
additional similar cardiac conditions.  AR 485.  Dr. Swanson's February 2005 findings conflict

22
with Dr. Butcher's conclusion as well.  AR 567-568.  Additionally, Dr. Butcher is a family

23
practitioner whereas Dr. Swanson is a specialist in his field.  *See* 20 C.F.R. § 404.1527(d)(6).

24      ALJ Haubner provided specific and legitimate reasons for rejecting that portion of Dr.

25
Butcher's opinion that Plaintiff would never return to work.  *Murray v. Heckler*, 722 F.2d at 502.

26
He cited conflicting clinical evidence and an absence of clinical evidence.  He set out a detailed

27
and thorough summary, stated his interpretation thereof and made findings.  *Magallanes v.*

28

1   *Bowen*, 881 F.2d at 751.  In short, he did more than offer his conclusions.  *Embrey v. Bowen*, 849

2   F.2d at 421-422.

3          The ALJ's finding is supported by substantial evidence and is free of legal error.

4          **D.     *Step Five Analysis***

5          In a single paragraph, unsupported by any legal authority and lacking analysis, Plaintiff

6   asserts the ALJ erred in his RFC finding because the "[v]oluminous medical records and the

7   evidence in the record regarding her daily activities indicate [she] has far more extensive and

8   serious limitations . . .."  (Doc. 14 at 11:4-12.)  Next, Plaintiff complains the VE's testimony is

9   inconsistent with the ALJ's RFC finding.  More particularly, Plaintiff argues that the VE's

10  identification of three available jobs - officer helper, information clerk and cafeteria attendant -

11  require a reasoning level of at least two, and therefore, the positions would exceed the limitations

12  alleged in the ALJ's RFC.  (Doc. 14 at 11-12.)

13         Defendant argues to the contrary in that the ALJ's limitations were incorporated into each

14  unskilled job identified by the VE.  (Doc. 18 at 17.)  In response to the Commissioner's position,

15  Plaintiff contends there is a conflict between the DOT and the RFC, and therefore the RFC is not

16  supported by substantial evidence and is erroneous.  (Doc. 19 at 4-6.)

17         RFC is an assessment of an individual's ability to do sustained work-related physical and

18  mental activities in a work setting on a regular and continuing basis of eight hours a day, for five

19  days a week, or equivalent work schedule.  SSR 96-8p.  The RFC assessment considers only

20  functional limitations and restrictions which result from an individual's medically determinable

21  impairment or combination of impairments.  SSR 96-8p.  "In determining a claimant's RFC, an

22  ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay

23  evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a

24  medically determinable impairment.' "  *Robbins v. Social Security Admin.*, 466 F.3d 880, 883

25  (9th Cir. 2006).

26         SSR 00-4p states that generally, occupational evidence provided by a VE should be

27  consistent with the occupational information supplied by the DOT.  Where there is an apparent

28  conflict, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE to

support a determination or decision about whether the claimant is disabled.  *See* SSR 00-4p.  The ALJ may rely on the testimony of a VE over that of the DOT by determining that the explanation given by the VE is reasonable and provides a basis for doing so.  *Id.*

Although evidence provided by a VE "generally should be consistent" with the DOT, "[n]either the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict." *Massachi v. Astrue,* 486 F.3d 1149, 1153 (9th Cir. 2007) (citing SSR 00-4p).  Thus, the ALJ must first determine whether a conflict exists.  If it does, the ALJ must then determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT.  *Id.*  Where the ALJ fails to ask the VE is the positions are consistent with the DOT, the Court is unable to determine whether substantial evidence supports the ALJ's finding at step five.  *Id.*

Here, the VE identified three positions in the light or sedentary, unskilled category in response to the ALJ's fourth hypothetical:[3] office messenger or helper (DOT "239.667-010"), information clerk (DOT 237.367-018) and cafeteria attendant (DOT 311.677-010).  AR 621-623.

The DOT office helper classification number is 239.567-010 and it provides as follows:

> STRENGTH: Light Work - Exerting up to 20 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or up to 10 pounds of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

> Reasoning: Level 2 - Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

The same strength and reasoning level is found in the description of cafeteria attendant, DOT 311.677-010.

---

[3] Plaintiff's characterization of the ALJ's questioning of the VE as a "Gordian knot" is overstating matters. While this Court agrees the exchange could have been more clear, the testimony is certainly not indecipherable.

1    Courts within the Ninth Circuit have consistently held that a limitation regarding simple

2   or routine instructions encompasses a reasoning level of one *and* two.

3    In *Meissl v. Barnhart*, 403 F.Supp.2d 981, 983-985 (C.D. Cal. 2005), the Central District

4   of California held that a limitation to simple and repetitive tasks was consistent with level two

5   reasoning positions as provided for in the DOT.  In that case, the claimant was limited to "simple

6   tasks performed at a routine or repetitive pace."  *Id*., at 982.  The court explained that while the

7   Social Security regulations provided only two categories of abilities with regard to understanding

8   and remembering instructions - "short and simple" and "detailed" or "complex" - the DOT has

9   six gradations for measuring that ability.  *Id.*, at 984.   The *Meissl* court held that to

10           equate the Social Security regulations use of the term "simple" with its use in the
             DOT would necessarily mean that all jobs with a reasoning level of two or higher
11           are encapsulated within the regulations' use of the word "detail."  Such a
             "blunderbuss" approach is not in keeping with the finely calibrated nature in
12           which the DOT measures a job's simplicity.

13   *Meissl v. Barnhart*, 403 F.Supp.2d at 984.  The use of the term "uninvolved" and "detailed" in

14   the DOT qualifies the term and refutes any attempt to equate the SSR use of the term "detailed"

15   with its use in the DOT.  *Id.*  The court found a claimant's RFC must be compared with the

16   DOT's reasoning scale.  Level one reasoning requires slightly less than simple tasks that are in

17   some way repetitive.  An example of a level one reasoning job would include the job of counting

18   cows as they come off a truck.  The court in *Meissl* determined that a limitation to simple

19   repetitive tasks is not inconsistent with positions requiring level two reasoning.  *Id.*; *Stubbs-*

20   *Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (a restriction to simple, repetitive tasks

21   adequately captures deficiencies in concentration, persistence and pace).

22           Here, the reasoning levels for two of the three jobs identified by the VE - office helper

23   and cafeteria attendant - both involve level two reasoning and are not in conflict with the ALJ's

24   limitation to simple repetitive tasking and unskilled work.  *Meissl v. Barnhart*, 403 F.Supp.2d at

25   984.  The information clerk position involves a reasoning level of four, and thus falls outside the

26   limitation imposed.  Nevertheless, the positions of office helper and cafeteria attendant combined

27   provide a regional job total of 29,656.  These numbers constitute a significant number of

28   available jobs.  *Barker v. Secretary of Health & Human Servs.*, 882 F.2d 1474, 1478 (9th Cir.

1  1989) (finding that 1266 jobs in the Los Angeles/Orange County are were considered

2  significant); *see also Moncada v. Chater,* 60 F.3d 521, 524 (9th Cir. 1995); *Martinez v. Heckler,*

3  807 F.2d 771, 775 (9th Cir. 1986).  Remand is therefore unnecessary.

4        In sum, the ALJ's findings are supported by substantial evidence and are free of legal

5  error.

6                                    **CONCLUSION**

7        Based on the foregoing, the Court finds that the ALJ's decision is supported by

8  substantial evidence in the record as a whole and is based on proper legal standards.

9  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

10  Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in

11  favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff,

12  Angela Racette.

13

14     IT IS SO ORDERED.

15  **Dated:    March 29, 2010**            **/s/ Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28